STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.N., A.W.-N., Z.W.-N., K.W.-N., and D.N.-1**

**No. 20-0435** (Kanawha County 19-JA-551, 19-JA-552, 19-JA-553, 19-JA-554, and 19-JA-637)

**MEMORANDUM DECISION**

Petitioner Father D.N.-2, by counsel Jason S. Lord, appeals the Circuit Court of Kanawha County's April 8, 2020, order terminating his parental rights to J.N., A.W.-N., Z.W.-N., K.W.-N., and D.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Catherine Bond Wallace, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights to the children without first granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a petition alleging that the parents abused and neglected the children due to physical abuse and the conditions in the home. Specifically, the DHHR alleged that petitioner beat the family's dog with a pipe in front of the children as punishment for the dog jumping up on one child. According to the DHHR, no one sought treatment for the animal, who lay dying in the front yard for two days before it ultimately passed away. According to the DHHR, one child indicated that he could "still hear the dog's cries when he trie[d] to fall asleep at night." The petition also alleged that petitioner punched the children.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one child and petitioner share the same initials, they will be referred to as D.N.-1 and D.N.-2 throughout this memorandum decision.

Further, the DHHR alleged that the parents' home was infested with bed bugs. Child Protective Services ("CPS") also observed a bottle of urine on the floor and piles of clutter and garbage throughout the home. When CPS attempted to enter the kitchen, which was obscured by a large blanket, the mother refused to allow entry and, ultimately, forced CPS to leave the home at petitioner's direction over the phone. Finally, the DHHR alleged that J.N.'s paternal grandmother obtained a domestic violence protective order against the parents for herself and J.N. due to the parents' erratic behavior. The following month, the DHHR filed an amended petition to include newborn child D.N.-1.

During the preliminary hearing, the circuit court ordered that the parents receive parenting and adult life skills education, submit to random drug screens, undergo a parental fitness evaluation, and attend domestic violence counseling. In December of 2019, the circuit court held an adjudicatory hearing. Neither parent appeared for the hearing, although they were represented by counsel. After the presentation of evidence, the court found petitioner to be an abusing parent.

In February of 2020, the court held a dispositional hearing. Petitioner moved for an improvement period, but the motion was denied. Petitioner then moved to voluntarily relinquish his parental rights, but the circuit court also denied this request. Given the limited nature of petitioner's assignment of error on appeal, it is unnecessary to recount the specific evidence introduced at the dispositional hearing. It is sufficient to note that, upon hearing the DHHR's evidence, the circuit court found that petitioner—who tested positive for marijuana, methamphetamine, and opioids during the proceeding—had a substance abuse problem that prevented him from parenting and had done nothing to correct it. The court further found that petitioner was homeless at the time of the hearing. According to the court, petitioner failed to participate in any services or even recognize any deficiencies in his behavior. Upon finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that it was necessary for the children's welfare, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[2]The court also terminated the parental rights of the mother of J.N and D.N.-1. The permanency plan for those children is adoption in their current foster home. The permanency plan for A.W.-N., Z.W.-N., and K.W.-N. is to remain in the custody of their nonabusing mother.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that he should have been entitled to an improvement period because he testified that he would fully comply. What petitioner fails to recognize, however, is that the evidence overwhelmingly contradicted this testimony. As the circuit court found, petitioner failed to participate in any services offered to him during the proceedings and even failed to attend some hearings, and petitioner offers no evidence on appeal to challenge this finding. Even more importantly, the court found that petitioner failed to recognize any deficiencies in his behavior. As this Court has held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Not only did petitioner fail to establish that he was likely to fully comply with an improvement period, as required to obtain one under West Virginia Code § 49-4-610, but because he failed to acknowledge the deficiencies in his parenting, it is clear that an improvement period would have been futile. As this Court has held, the circuit court has discretion to deny an improvement period when no improvement is likely, and we find no abuse of that discretion here. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Finally, petitioner does not challenge the circuit court's findings as to there being no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future or that termination was necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights upon such findings. As noted above, the circuit court found that petitioner did not participate in any of the required services below, which constitutes a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected. W. Va. Code § 49-4-604(d)(3) (providing that a situation in which there is no such reasonable likelihood includes when a parent has "not responded to or followed through with a reasonable family case plan."). Further, as this Court has long held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse

3

can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

4